[No. 18008.   Department One.   January 23, 1924.]

MINNESOTA MUTUAL LIFE INSURANCE COMPANY, *Appellant*, v. WILLIAM I. FRASER *et al., Respondents.*[1]

CONTRACTS (84)—CONSTRUCTION—LOANS AND ADVANCES. In a contract whereby an insurance company agreed to make certain monthly "advances" to an agent for general agency expense allowance, they were primarily to be paid out of the earnings of the business, where they benefited the company generally; and in the absence of a clearly expressed intent to the contrary, were mere prepayments, and not recoverable, though in excess of the earnings.

Appeal from a judgment of the superior court for Spokane county, Lindsley, J., entered February 26, 1923, upon sustaining a demurrer to the complaint, dismissing an action for money received. Affirmed.

*Cannon & McKevitt,* for appellant.

*Harry Rosenhaupt* and *Lucius G. Nash,* for respondents.

TOLMAN, J.—The plaintiff in this action has appealed from a judgment of dismissal after the sustaining of a demurrer to its complaint.

The point in issue is whether or not certain advances made by the appellant to the respondent under a written contract between the parties were mere prepayments not recoverable, or were loans for the recovery of which an action will lie. By the contract in question the respondent was employed by appellant to act as its general agent for the writing of life insurance in the states of Washington, Idaho and Montana. Among other things, the contract contains the following provisions:

"The company further agrees to pay the agent for general agency expenses, during the continuance of this

[1]Reported in 222 Pac. 228.

contract, in the prosecution of the company's business, $125.00 per month, payable in two equal installments on the 15th and last days of each month.

"The company further agrees to pay the agent for general agency expense allowance, during the continuance of this contract, in the prosecution of the company's business, three ($3.00) dollars for each and every thousand issued and paid for business (exclusive of term insurance) which the agent shall produce in any year, ending March 1st; against which the company further agrees to advance to the agent during the continuance of this contract $375.00 per month, payable in two equal installments on the 15th and last days of each month. It is understood, however, that no agency expense allowance or advance shall be paid the agent after the date of cancellation of contract, if such notice of cancellation of contract shall be given by either party at any time."

The complaint pleads the full payment of $125 per month during the time the contract was in force, and that feature of the contract is not further involved, and further pleads "that plaintiff advanced said agent under the second paragraph quoted from said contract, the sum of $375 per month, until moneys so advanced greatly exceed the amount due said agent and there now remains of said advances unearned, which on September 1st, 1922, amounted to the sum of $3,591.40, and which sum is now due and owing this plaintiff," and further alleges a demand therefor and non-compliance by the respondent, and it is for this amount that judgment is demanded.

"The word 'advances,' when taken in its strict legal sense, does not mean 'advancements,' but in legal parlance has a different and far broader signification.

"Context and attendant circumstances. While the use of the word in contracts has been in many instances construed, the word has no such certain meaning that the court can determine the sense in which the term is used by the parties without examining the contract as

an entirety and seeking the aid of the surrounding circumstances and the practical construction of the contract by the parties themselves." 2 C. J., p. 32.

It is obvious that in many, if not most cases, the sense in which the word "advances" is used is clearly discernible from the context or the surrounding circumstances, or both. As, if the contract be a mortgage covering future advances, such advances are clearly a loan, while money advanced to further the purposes of the one advancing it may as clearly be a prepayment without expectation of its return. So but few of the authorities on this subject are of any aid in determining the construction to be given to the contract before us. There are, however, two lines of cases which appear to be somewhat in conflict, and which form the basis for the opposing contentions here. Appellant relies upon *Whitestone v. American Insurance Union*, 143 Fed. 862, and the cases which follow it. In that case, however, the contract, in introducing the subject of advances, provides: "In full payment for such work done and services performed, the first party will pay," etc., and the agent there gave a promissory note for such advances, upon which the suit was brought, pleading in defense that the note was without consideration. Indicating that the advances were on account of commissions still to be earned, and so for the benefit of the advancer, and also a construction by the parties themselves. So that we have little hesitancy in concluding that the court was right in there holding that the advances were intended as a loan and recoverable as such.

Respondent relies upon the case of *Northwestern Mutual Life Insurance Co. v. Mooney*, 108 N. Y. 118, 15 N. E. 303, and a considerable line of decisions based thereon. In that case the company agreed to advance $200 per month to be used by the agent in advancing

the interests of the company in the territory, which was "to remain a lien on all business . . . secured by the agent under the contract until repaid." The court there said:

"In the first place there is no express agreement on the part of Mooney to pay back the money; there is no agreement that its advance shall create an indebtedness on his part; no word signifying that he is to be a borrower, nor that the plaintiff will lend to him any money. These omissions in an agreement so fully and minutely defining the duties and contract obligations of the agent, and the contract rights of the company, are of great significance. It would have been much more natural to insert words signifying that to be the true character of the transaction, if it was so intended, than omit them, and much easier to say directly that Mooney assumed a personal liability, if that were the fact, than to use words which require an extended argument on the part of counsel to satisfy a referee or court that such liability, although not expressed, may be inferred. It would have been a simple matter to have said that Mooney would repay the money, if that was the agreement, and that such or similar words were not used is one proof, among others, that the parties never intended to enter into such an agreement as has with difficulty been spelt out for them. It certainly was not omitted from an unconsciousness of the value and importance of definite and accurate statement of the terms upon which the relations of principal and agent were to be formed. Of all the many topics covered by the contract this, the simplest, is alone left in doubt. The rest are treated with professional art and prudence. But in respect to this matter what are the words used? It is agreed that for six months the company 'will advance to the said Mooney the sum of $200 per month.' To advance is to bring forward. Standing by itself it means nothing more than that the company will 'forward' to Mooney this money; they will take it from their treasury and put it in his hands. For what purpose must be elsewhere ascertained. It may characterize a gift; it may be in anticipation of a

debt to mature at a future time; it may characterize an act by which a consignee is put in funds for the management of the business of the consignor, or any transaction by which an agent, through the use of money, is desired to promote the business of the employer. In other words the use to which it is to be put will determine the nature and qualify the character of the advance. If to the use of the advancee it may be regarded as a gift or a loan according to circumstances, but if the advance is to be used in the business of the person making it, it could be regarded neither as a gift nor a loan."

The language which we have quoted is equally applicable to the case at bar. Reading that part of the contract covering this subject, which has been quoted, we are convinced that the advances for general agency expense allowance, though primarily to be paid out of the earnings of the business, if that was sufficient, were such as benefited the company generally, promoted its welfare, tended to increase its business, and in the absence of some provision in the contract from which such intent can be clearly inferred, such as that such advances were distinctly for the benefit of the agent, they were not loans, created no personal liability on the part of the agent, and to the extent that they exceeded the earnings under the contract are not recoverable.

The judgment of the trial court is therefore affirmed.

MAIN, C. J., HOLCOMB, PARKER, and MACKINTOSH, JJ., concur.