[No. 32415.   Department One.   September 8, 1953.]

MANFRED SELIG, *Appellant,* v. LOUIS BERGMAN, *Respondent.*[1]

*Robbins & Robbins* and *Marvin Mohl,* for appellant.

*Sidney C. Volinn,* for respondent.

[1] Reported in 260 P. (2d) 883.

HILL, J.—This is an action by an employer to recover from a former salesman employee the amount by which the advances made to the salesman during the years 1950 and 1951 exceeded his commissions earned during those years.

The issue in the lower court and here is whether the advances made by the employer to the salesman employee represented an unconditional obligation requiring repayment or a conditional obligation to be repaid from commissions earned. The trial court took the latter view and dismissed the action.

No agreement covering the repayment of advances in excess of commissions earned was established.

We choose to adopt the majority rule that, where advances made to a salesman are charged against his commissions earned, he is not required to repay any excess of advances over commissions unless it has been expressly or impliedly agreed that he do so. *North-western Mut. Life Ins. Co. v. Mooney,* 108 N. Y. 118, 15 N. E. 303 (1888); *Pease Piano Co. v. Taylor,* 232 N. Y. 504, 134 N. E. 548 (1921); *Roofing Sales Co. v. Rose,* 103 N. J. L. 553, 137 Atl. 211 (1927); *Richmond Dry Goods Co. v. Wilson,* 105 W. Va. 221, 141 S. E. 876, 57 A. L. R. 31 (1928); *Shaler Umbrella Co. v. Blow,* 199 Wis. 489, 227 N. W. 1 (1929); *Hibbs-Kiefer Hat Co. v. Schneiderhan,* 236 Ky. 470, 33 S. W. (2d) 304 (1930); *Smith v. Franklin Printing Co.,* 54 Ga. App. 385, 187 S. E. 904 (1936); *Sutton v. Avery,* 132 Conn. 397, 44 A. (2d) 701, 165 A. L. R. 1364 (1945); *Harold Furnace Co. v. Junglas,* 40 O. O. 75, 55 Ohio L. Abs. 9, 88 N. E. (2d) 586 (1949); *Electric Supply Corp. v. Meyrick,* 349 Ill. App. 383, 110 N. E. (2d) 525 (1953); *A. Gagliano, Inc. v. Clark,* 63 So. (2d) (La.) 252 (1953); 2 Labatt, Master & Servant (2d ed.) 1358, § 461 (4). In our own case of *Minnesota Mut. Life Ins. Co. v. Fraser,* 128 Wash. 171, 222 Pac. 228 (1924), in which the characteristics of such advances are discussed, we definitely elected to follow the New York case of *North-western Mut. Life Ins. Co. v. Mooney, supra,* and held that there is no personal liability on the part of an agent where advances exceeded the earnings of a general insurance agency.

However, should a salesman quit immediately after receiving an advance, or thereafter under circumstances that would indicate he had not endeavored in good faith to sell for the employer and to earn commissions, the employer can recover the excess of the advances over commissions earned. *Kupfer v. Holtzmann*, 88 N. Y. S. 362 (1904); *Johnson v. Quayle & Son Corp.*, 236 App. Div. 351, 257 N. Y. S. 874 (1932); 2 Labatt, Master & Servant (2d ed.) 1444, § 495.

■ Although appellant argues that we should not adopt the general rule of which we have above expressed approval, he seeks to bring himself within the exception we have just stated, claiming that respondent devoted himself to the sale of side lines of merchandise to such an extent as to breach the contract, and that he voluntarily quit his employment.

It is apparent that appellant knew of and did not object to respondent's handling side lines, and that the trial court was justified in so finding, as it was in finding that the respondent devoted himself primarily to selling the appellant's line and that only a minor part of his total sales consisted of side lines.

We are satisfied that respondent did not breach the contract by selling side lines, and that he did not quit his employment until appellant refused to make the customary advances. Quitting was justified under such circumstances. *Sutton v. Avery, supra.*

Appellant has seized upon language in *Schlesinger v. Burland,* 42 Misc. 206, 85 N. Y. S. 350 (1903), and other cases as the basis for a contention that the rationale of the majority rule which we have approved is "joint venture"; and urges that unless the salesman can establish the elements of a joint venture, as we have expounded them in certain damage cases, the employer should be permitted to recover the advances made.

While the relationship between the employer and the salesman may be "in the nature of a joint venture" (*Shaler Umbrella Co. v. Blow, supra*), the essential question to be

answered is: What was the intent of the parties? Appellant's argument seems to us to be effectively and completely answered by the following quotation from *Richmond Dry Goods Co. v. Wilson, supra*:

"We cannot construe this engagement to imply that all the risk was taken by the employee. We regard it rather as signifying a joint enterprise in which the employee furnished his time and ability and the employer furnished the money necessary to enable the employee to devote himself thereto. Both expected the adventure to produce a fund (the earned commissions) from which each would be fully compensated—the one for his time and labor, and the other for his money. The advances are therefore not regarded as loans to the employee but as speculations in a common enterprise. 'In its strictly etymological significance, the "advance" of money would not imply a loan. Century Dictionary, "Advance"; 1 Am. & Eng. Ency. of Law (2d ed.) 757. We speak of an advance of wages and an advance of salary, yet no one would regard this as a loan of so much money to the employee, which he has promised or is expected to repay. Again, for the purposes of a joint adventure, one agrees to give his services, and the other to advance the capital required. No one would consider the former bound to repay the capital advanced out of his own means. Hence, without a promise to repay, express, or fairly to be implied from the agreement under which the advances were made, a promise to advance money for a particular purpose—as here, the furtherance of the defendant's business— does not import an expectation of its return personally by the person to whom the money was advanced.' *Schlesinger v. Burland, supra*, p. 351."

◼ Appellant's assignments of error directed against the substance of the findings of the trial court are without merit, as we cannot say that the evidence preponderates against the findings. See *Peterson v. Schoonover*, 42 Wn. (2d) 621, 257 P. (2d) 209 (1953).

◼ Appellant makes assignments of error relating to an inadvertent mistake in a finding where the word "plaintiff" was used where the word "defendant" obviously was intended; and in the use of the word "compensation" in two places where "advances against commissions" may have

been the proper phraseology. Any error in semantics was not prejudicial.

The judgment is affirmed.

GRADY, C. J., MALLERY, WEAVER, and OLSON, JJ., concur.

October 26, 1953. Petition for rehearing denied.